# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**

* * * * * * * * * * * * * * * * * * *
| | | |
|---|---|---|
| TERI ENNIS and JOSHUA ENNIS, | \* | |
| on behalf of B.E., minor child, | \* | No. 16-1148V |
| | \* | |
| Petitioners, | \* | Special Master Christian J. Moran |
| | \* | |
| v. | \* | |
| | \* | Filed: July 15, 2025 |
| SECRETARY OF HEALTH | \* | |
| AND HUMAN SERVICES, | \* | |
| | \* | |
| Respondent. | \* | |

* * * * * * * * * * * * * * * * * * *

<u>Amber Diane Wilson</u>, Wilson Science Law, Washington, DC, for Petitioners;
<u>Colleen Clemons Hartley</u>, United States Dep't of Justice, Washington, DC, for Respondent.

**PUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS**[1]

Pending is the petitioners' motion for attorneys' fees and costs. They are awarded **$272,876.90**.

\*   \*   \*

On September 15, 2016, petitioners filed for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10 through 34. Petitioners alleged that that the influenza and measles, mumps, rubella vaccines their daughter, B.E., received on February 13, 2015, caused B.E. to suffer from

---

[1] Because this published decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This posting means the decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

psoriasis and autoimmune hepatitis. Petitioners were represented by Attorney Amber Wilson, who was then affiliated with the law firm, Maglio, Christopher & Toale, P.C.

The litigation lasted more than eight years. During the litigation, Ms. Wilson stopped working for Maglio, Christopher & Toale and began to work at her own law firm. At various times, petitioners retained three people to assist them in their claim, Thomas Cupps, Omid Akbari, and Nanette Silverberg. The Secretary contested the case and retained other people. It appeared that the case was going to proceed to a hearing and Ms. Wilson added another attorney, Gary Krochmal, to assist her with trial.

Shortly before a hearing during which Dr. Silverberg was anticipated to testify, the parties reached a tentative agreement to resolve the case informally. See Order, issued Nov. 30, 2023. As part of the process for finalizing the tentative agreement, petitioners retained an attorney to assist them in Probate Court to become guardian / conservator for B.E. On December 12, 2024, the parties filed a joint stipulation, which the undersigned adopted as a decision on December 13, 2024. 2024 WL 5320027.

On January 22, 2025, petitioners filed a motion for attorneys' fees and costs. Petitioners request attorneys' fees and costs that total $315,214.40. Pursuant to General Order No. 9, petitioners warrant that they have not personally incurred any costs related to the prosecution of their case. Exhibit 144. Respondent deferred to the undersigned's assessment, submitting its generic response. Resp't's Resp., filed Feb. 1, 2025. Petitioners did not file a reply thereafter.

\*   \*   \*

Because petitioners received compensation, they are entitled to an award of reasonable attorneys' fees and costs. 42 U.S.C. § 300aa–15(e). Thus, the question at bar is whether the requested amount is reasonable.

The Vaccine Act permits an award of reasonable attorney's fees and costs. 42 U.S.C. § 300aa–§15(e). The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. This is a two-step process. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008). First, a court determines an "initial estimate … by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial

calculation of the fee award based on specific findings. Id. at 1348. Here, because the lodestar process yields a reasonable result, no additional adjustments are required. Instead, the analysis focuses on the elements of the lodestar formula, a reasonable hourly rate and a reasonable number of hours.

In light of the Secretary's lack of objection, the undersigned has reviewed the fee application for its reasonableness. See McIntosh v. Sec'y of Health & Human Servs., 139 Fed. Cl. 238 (2018).

### A.   Reasonable Hourly Rates

Under the Vaccine Act, special masters, in general, should use the forum (District of Columbia) rate in the lodestar calculation. Avera, 515 F.3d at 1349. There is, however, an exception (the so-called Davis County exception) to this general rule when the bulk of the work is done outside the District of Columbia and the attorneys' rates are substantially lower. Id. 1349 (citing Davis Cty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)). In this case, most of the attorneys' work was done inside of the District of Columbia.

Petitioners request hourly rates that vary depending upon the person and the year. See Exhibit 137 passim and Exhibit 138 at 35. The proposed rates are consistent with previous awards and, therefore, are reasonable. See Delaney v. Sec'y of Health & Hum. Servs., No. 21-1620V, 2025 WL 900756 (Fed. Cl. Spec. Mstr. Feb. 18, 2025).

### B.   Reasonable Number of Hours

The second factor in the lodestar formula is a reasonable number of hours. Reasonable hours are not excessive, redundant, or otherwise unnecessary. See Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993). The Secretary also did not directly challenge any of the requested hours as unreasonable.

The undersigned has reviewed the submitted billing entries and finds some adjustments are required.

Maglio, Christopher & Toale[2]

People consistently charged an excessive amount of time for the filing of exhibits and drafting an associated notice of filing.  See, e.g. entries for Feb. 2, 2018; Dec. 18-21, 2018.[3]  These activities should not be charged at all.  Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989); Bennett v. Dep't of Navy, 699 F.2d 1140, 1145 n.5 (Fed. Cir. 1983); Guy v. Sec'y of Health & Human Servs., 38 Fed. Cl. 403, 407-08 (1997).

Time was spent preparing for a motion (or motions) for interim fees that was (or were) not filed.  See entries for Mar. 14, 2018; Feb. 5-14, 2019; Mar. 11-12, 2019; May 8-14, 2020.

Excessive time was spent on a routine motion for enlargement of time.  See entries for Mar. 21, 2019.

To account for these charges, $3,000 is removed from the proposed fees.  See Fox v. Vice, 563 U.S. 836, 838 (2011) (indicating that trial courts may use "rough justice" in awarding attorneys' fees).

Wilson Science Law[4]

No reductions are made to the amount of time Ms. Wilson spent.  Instead, some of her invoicing should be commended.

Ms. Wilson reviewed, in great detail, the submissions from the Secretary's attorney.  She appropriately differentiated the articles that she was reviewing.  For example, on April 6, 2020, she created eight entries reflecting that she reviewed eight different articles.  With this much specificity, crediting all of Ms. Wilson's time is reasonable.  (By way of contrast, if Ms. Wilson had combined all the entries into one larger task called "Review articles," then assessing the reasonableness of her work would have been more difficult).

Likewise, Ms. Wilson specified different portions of the brief she was drafting.  See, e.g., entry for Jan. 21, 2011 ("Begin review of expert report from Respondent's immunology expert and draft of citations for outline of medical

---

[2] The time entries for Maglio, Christopher & Toale are found at Exhibit 138.  They start on January 20, 2018.

[3] Those citations are illustrative, not exhaustive.

[4] The time entries are found at Exhibit 137.  They start on March 29, 2020.

theory section for prehearing brief for special master"). Again, this detail promotes an assessment of the reasonableness of the activity.

### Gary A. Krochmal, PLLC[5]

Mr. Krochmal spent less than 10 hours on the case. His activities in preparing for a hearing are reasonable. No adjustment is required.

Therefore, petitioners are awarded attorneys' fees in the amount of $222,255.50.

### C.    Costs Incurred

Like attorneys' fees, a request for reimbursement of costs must be reasonable. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994). Petitioners have requested reimbursement for relatively small costs such as obtaining medical records and medical articles. These costs are reasonable.[6]

The items meriting additional attention concern the probate attorneys and the three people retained during the litigation.

### Stevenson & Tierney[7]

These attorneys charged a flat rate of $1,000 to assist with the appointment of petitioners as guardians / conservators in Kentucky probate court. They also charged for the filing fee. These charges are reasonable.

---

[5] These time entries are found at Exhibit 140. They start on October 7, 2023.

[6] A questionable set of costs derive from a trip to visit petitioners. See Exhibit 139 at 1 (entries for Apr. 11, 2017). In the undersigned's experience, nearly all attorneys in the Vaccine Program successfully and competently represent their clients without meeting the client in-person. Thus, traveling to meet clients cannot be said to be essential to professional representation. However, the September 16, 2016 order regarding attorneys' fees did not warn counsel about excessive traveling. Thus, the associated costs are accepted. By way of contrast, the undersigned's current standard order regarding attorneys' fees advises counsel that traveling simply to meet a client is likely not reasonable.

[7] This invoice is found within Exhibit 137 at page 55. Ms. Wilson has included the invoice for the probate attorneys as within her firm's costs.

Thomas Cupps

The first expert retained was Thomas Cupps. He graduated from medical school in 1975, became board-certified in internal medicine in 1978, and became board-certified in allergy and immunology in 1982. Exhibit 35 (curriculum vitae) at 1. He has worked within the division of rheumatology, immunology and allergy at Georgetown University Medical Center. Id. at 2.

In Dr. Cupps's report, he proposed that B.E. suffered from psoriasis and autoimmune hepatitis and that the vaccines caused those conditions. Exhibit 34. He has charged 68 hours of work at the rate of $650.00 per hour. Dr. Cupps's invoice totals $44,200.00. Exhibit 139 at 73-75.

The proposed amount is unreasonable. Both the number of hours (68 hours) and the proposed hourly rate ($650 per hour) are excessive.

As discussed below, petitioners' other two experts completed their first reports in approximately half the time for which Dr. Cupps has invoiced. This evidence supports a finding that a reasonable amount of time for preparing a report is 34 hours.

With respect to Dr. Cupps's proposed hourly rate, petitioners have failed to present evidence to support a finding that $650.00 per hour is reasonable for Dr. Cupps. Petitioners identified one case in support. Pet'rs' Mot. at 3 ¶ 5. However, the cited case, Gomes v. Sec'y of Health & Hum. Servs., No. 13-375V, 2015 WL 4722652 (Fed. Cl. Spec. Mstr. July 20, 2015), contains no analysis of Dr. Cupps's hourly rate.

Regardless of Dr. Cupps's qualifications, his performance in this case was not good. Poor performance may justify a reduction in an expert's proposed hourly rate. Frantz v. Sec'y of Health & Hum. Servs., 146 Fed. Cl. 137, 146 (2019); Murray v. Sec'y of Health & Hum. Servs., No. 19-1976V, 2023 WL 9503422, at *2-3 (Fed. Cl. Spec. Mstr. Dec. 22, 2023) (reducing expert's rate from $500 per hour to $100 per hour).

Here, after Dr. Cupps proposed B.E. suffered from autoimmune hepatitis, the Secretary retained a pediatric gastroenterologist, Elizabeth Rand, who stated that B.E. did not suffer from autoimmune hepatitis. Exhibit F. Petitioners did not submit a report from Dr. Cupps in response to Dr. Rand. Furthermore, when petitioners argued their case, they anticipated relying upon Dr. Cupps's opinion for only rebuttal testimony. See Pet'rs' Status Rep., filed Apr. 1, 2021. Regardless,

6

Dr. Cupps's opinion that B.E. suffered from autoimmune hepatitis seems lacking in reliability. See Resp't's Br., filed Sep. 29, 2021, at 27-28.

Dr. Cupps appears not to have any specialized experience in diagnosing or treating autoimmune hepatitis. See Exhibit 35 (curriculum vitae). Offering an opinion that appears to be outside his field of expertise complicated the case and may have hindered an informal resolution of the case. When these factors are considered, a reasonable hourly rate for Dr. Cupps's work is $300 per hour. See Buchman v. Sec'y of Health & Hum. Servs., No. 20-834V, 2023 WL 7220777 (Fed. Cl. Spec. Mstr. Oct. 11, 2023).

A reasonable amount of compensation, therefore, is $10,200.00. This is a deduction of $34,000.00.

Omid Akbari

The second person retained was Omid Akbari. He earned a Ph.D. in immunology but is not a medical doctor. Exhibit 65 (curriculum vitae).

Dr. Akbari opined that the vaccinations "could have been the environmental trigger necessary to induce expression of disease in a genetically susceptible child." Exhibit 65 at 11. The disease that Dr. Akbari discusses in his report is psoriasis.

For his report, he has charged 30.5 hours at a rate of $500 per hour. His total request is $15,250.00. Exhibit 139 at 131-32.

The proposed amount is excessive. As suggested above, the proposed number of hours (30.5) is reasonable. However, the hourly rate is unreasonably high.

Because Dr. Akbari is not a medical doctor, he should not be compensated as highly as people who are qualified to treat people. This reasoning has been found not arbitrary. See Lewis v. Sec'y of Health & Human Servs., No. 15-907V, 2020 WL 831998, at *7 (Fed. Cl. Spec. Mstr. Jan. 24, 2020), mot. for rev. denied in relevant part, 149 Fed. Cl. 308, 314-15 (2020) (citing Dominguez v. Sec'y of Health & Human Servs., No. 12-378V, 2018 WL 3028975 (Fed. Cl. Spec. Mstr. May 25, 2018)).

Accordingly, a reasonable hourly rate for Dr. Akbari is $325.00. A reasonable amount of compensation for Dr. Akbari is $9,912.50. This is a deduction of $5,337.50.

7

Nanette Silverberg

The third person whom petitioners retained is Nanette Silverberg. She graduated in medical school in 1994 and has been teaching dermatology in various roles since 1999. She became board-certified in dermatology in 1998. She also holds a board certification in pediatrics. Exhibit 63 (curriculum vitae).

Dr. Silverberg turned out to be petitioners' primary, and potentially exclusive, expert. See Pet'rs' Status Rep., filed Apr. 1, 2021. The thrust of her opinion, which were expressed in three reports, is that the vaccines caused B.E. to suffer psoriasis. See Exhibits 62, 109, and 130.

Dr. Silverberg prepared three invoices. The first was directed to Ms. Wilson when Ms. Wilson worked at Maglio, Christopher & Toale. Exhibit 139 at 118. The other two were created when Ms. Wilson was working at her own firm. Exhibit 137 at 32 and 43.

Dr. Silverberg proposes being compensated at a rate of $500.00 per hour. This rate is reasonable. The number of hours that Dr. Silverberg has charged is also reasonable. Thus, no change is made to the amount requested for Dr. Silverberg.[8]

D.   Conclusion

The Vaccine Act permits an award of reasonable attorney's fees and costs. 42 U.S.C. § 300aa-15(e). The following amounts are awarded:

---

[8] Although Dr. Silverberg prepared reports that were at least credible and prepared appropriate invoices, another aspect of being an expert witness raised a concern. It appeared that Dr. Silverberg may not have been very flexible / available when scheduling time to testify at a hearing. Any attorney considering retaining Dr. Silverberg in the future is encouraged to address whether she is available to attend hearings, which might last more than one day.

| Item | Requested Amount | Adjustment | Awarded Amount |
|---|---|---|---|
| Maglio, Christopher & Toale Fees | $74,139.50 | | |
|   Excessive Charges | | $3,000.00 | $71,139.50 |
| Maglio, Christopher & Toale Costs | $78,424.62 | | |
|   Reduction for Dr. Cupps | | $34,000.00 | |
|   Reduction for Dr. Akbari | | $5,337.50 | $39,087.12 |
| Wilson Science Law Fees | $146,364.40 | | |
|   Adjustments | | 0 | $146,364.40 |
| Wilson Science Law Costs | $11,534.28 | | |
|   Adjustments | | 0 | $11,534.28 |
| Krochmal Fees | $4,751.60 | | |
|   Adjustments | | 0 | $4,751.60 |
| TOTAL | | | $272,876.90 |

Accordingly, the undersigned awards **$272,876.90** (representing $222,255.50 in attorneys' fees and $50,621.40 in attorneys' costs). This amount shall be paid through an ACH deposit to petitioners' counsel's IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[9]

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master

---

[9] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.