# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

| | |
|---|---|
| TERI ENNIS and JOSHUA ENNIS, on behalf of B.E., minor child, | No. 16-1148V |
| Petitioners, | Special Master Christian J. Moran |
| v. | Filed: August 18, 2026 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

Amber Diane Wilson, Wilson Science Law, Washington, DC, and Jennifer Maglio, MCTLAW, Sarasota, FL, for Petitioners;
Dima J. Atiya, United States Dep't of Justice, Washington, DC, for Respondent.

**PUBLISHED DECISION ON REMAND**
**AWARDING ATTORNEYS' FEES AND COSTS**[1]

After the entitlement phase of this case ended via a decision adopting a stipulation awarding Teri and Joshua Ennis $35,000.00 plus an additional $492.00 for a Medicaid lien, the Ennises requested attorneys' fees and costs, totaling $315,214.40. While many fees-related questions have now been resolved, one final issue in dispute remains: a reasonable hourly rate and/or cost reimbursement for the work of Petitioners' expert, Omid Akbari, Ph.D. With the resolution of that issue as explained below, the Ennises are awarded: $276,689.40 (including $13,725.00 for Dr. Akbari).

[1] Because this published decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This posting means the decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

# I. Procedural History

## A. Entitlement Proceedings

The Ennises alleged that that the influenza and measles, mumps, rubella vaccines (collectively "the vaccines") their daughter, B.E., received on February 13, 2015, caused B.E. to suffer from psoriasis and autoimmune hepatitis. Pet., filed Sep. 15, 2016.

The litigation lasted more than eight years. Relatively early, the Secretary recommended against an award of compensation because, in part, the Ennises had not presented a report from an expert. Resp't's Rep., filed Jan. 19, 2017. Thus, in anticipation of the parties retaining experts, a set of instructions for experts was issued in draft form on July 31, 2017. After the parties did not interpose any objections, the Expert Instructions became final on August 16, 2017.

The Expert Instructions provide guidance about the minimum topics about which the experts should express opinions. The Expert Instructions also provide guidance to the experts whom petitioners retain for preparing their invoices.[2] The Expert Instructions directed that "The expert should list separate tasks separately. A rule of thumb is that every half hour should have a separate task, differentiated from other tasks." Expert Instructions at 8.

To assist them in presenting their claim, the Ennises retained three experts: Thomas Cupps, Omid Akbari, and Nanette Silverberg. Only the reasonable hourly rate for Dr. Akbari remains unresolved in the present remand.

Omid Akbari earned a Ph.D. in cellular and molecular immunology in 1998.[3] His academic career began in 2001. Since 2015, he has been a tenured professor of allergy and immunology in the department of molecular microbiology and immunology at the Keck School of Medicine, University of Southern California. His curriculum vitae lists 70 articles published in peer-reviewed journals. Dr. Akbari's professional career has focused on immunology research and the study of immune mechanisms underlying inflammatory and autoimmune diseases. In his report, Dr. Akbari explained that his research focuses on immune tolerance, autoimmune disease, and the regulation of acquired and innate immune responses. He further explained that his laboratory investigates immune tolerance and the molecular pathways underlying autoimmune and inflammatory diseases, including psoriasis, and that those same immunologic mechanisms formed the basis of the opinions he offered in this case concerning biological plausibility. Unlike a clinician retained primarily to render diagnostic or treatment opinions, Dr. Akbari was retained for his specialized expertise regarding immunologic mechanisms and biological

[2] The portion of the expert instructions for preparing invoices was directed to experts retained by the petitioners only because only petitioners submit expert invoices to special masters.

[3] Information about Dr. Akbari's background comes from his curriculum vitae, which is Exhibit 65.

plausibility. His role was to assist Petitioners in explaining the complex immunological processes relevant to their causation theory.

Dr. Akbari expressed his opinions through one report, filed as Exhibit 64. The report is 11 single-spaced pages, with another page for references. Although the report is not structured as recommended in the Expert Instructions, some of the requested information is presented. Over the course of about two pages, Dr. Akbari explains his qualifications, highlighting his experience with psoriasis. His assignment was intentionally limited to the immunological issues surrounding psoriasis and biological plausibility, reflecting the discrete scientific questions for which the Ennises retained his expertise. His report omits any discussion of events in B.E.'s life. For example, Dr. Akbari does not cite any of her medical records by exhibit number and page number. Rather, the bulk of his report is devoted to explaining the causes of psoriasis and why vaccines can cause psoriasis. Rather than functioning as a traditional clinical causation report evaluating B.E.'s medical history or rendering medical diagnoses, Dr. Akbari's report focused on the scientific literature and the immunologic pathways through which vaccination could plausibly trigger psoriasis.

The Secretary obtained responses from the three people whom he had previously retained. Exhibits I, J, and L. The Ennises filed a supplemental report from Dr. Silverberg. Exhibit 109.

In the ensuing status conference, the Secretary requested an opportunity to obtain more reports from experts. In this conference, Petitioner's counsel disclosed that B.E. was no longer receiving medical care for the injuries allegedly caused by the vaccinations. Because B.E.'s injuries were relatively defined, the case could be appropriate for an informal resolution, but the Secretary did not want to explore settlement. Resp't's Status Rep., filed July 16, 2020.

Accordingly, the parties were directed to advocate through briefs. Order, issued Oct. 13, 2020. One purpose of the order for briefs was to have the parties update their evidence. For example, the order required the parties to submit a current curriculum vitae and a statement from each testifying expert that they were not aware of any newly published articles.

The Ennises submitted a brief on March 15, 2021. The brief, however, was not a model of clarity. The brief cited Dr. Akbari's opinions to explain how the Ennises' evidence supported a finding that the vaccines can cause psoriasis. See Pet'rs' Br., filed Mar. 15, 2021, at 39-48. However, the Ennises did not list Dr. Akbari as one of their witnesses. See id. at 62. The Ennises were instructed to clarify their position. Order, issued Mar. 17, 2021.

The Ennises stated that they were relying upon the reports from Dr. Cupps and Dr. Akbari, but did not anticipate calling them as witnesses. Pet'rs' Status Rep., filed Apr. 1, 2021. It was later confirmed during an unrecorded April 16, 2021 status conference, that Dr. Akbari was not attending the trial, and that his testimony was not deemed necessary as the Ennises could prevail based upon the opinions from Dr. Silverberg.

A hearing was eventually scheduled to start on December 4, 2023. Order, issued Dec. 12, 2022. But five days before, the parties reached a tentative settlement agreement, and the hearing was cancelled. Order, issued Nov. 30, 2023.

Due, in part, to complications involving identifying the Medicaid lien and (separately) the health of Ms. Ennis, the process of confirming the tentative agreement was prolonged. On December 12, 2024, the parties filed a joint stipulation, which the undersigned adopted as a decision on December 13, 2024. 2024 WL 5320027.

Although the entitlement phase concluded through settlement before trial, the parties' subsequent fee litigation ultimately narrowed to a single issue: the reasonable hourly rate for Dr. Akbari's expert services.

**B. Initial Fee Proceedings**

On January 22, 2025, the Ennises filed a motion for attorneys' fees and costs in the total amount of $315,214.40. The Ennises' motion is five pages in length, accompanied by eight exhibits. Exhibits 137-44. The exhibits do not include affidavits from any of the experts attesting to the reasonableness of their proposed rates. Cf. Raney v. Fed. Bureau of Prisons, 222 F.3d 927, 938 (Fed. Cir. 2000) (en banc) ("in future cases, the trial court should demand adequate proof from individuals familiar with the market of the community billing rate charged by attorneys of equivalent skill and experience performing services of similar complexity").

The Secretary deferred to the undersigned's assessment, submitting his generic response. Resp't's Resp., filed Feb. 1, 2025. The Ennises did not file a reply thereafter.

The Ennises were awarded fees and costs that summer. First Fees Decision, issued July 15, 2025. For the attorneys' fees, nearly all activities were found to be reasonable, but cost reductions were made for Dr. Cupps's hourly rate and hours, and Dr. Akbari's hourly rate. 2025 WL 2239245.

**C. Motions for Review of Cost Reductions**

The Ennises filed a motion for review of the fees decision. As to Dr. Akbari, the Ennises invoked the factors listed in Frantz v. Sec'y of Health & Hum. Servs., 146 Fed. Cl. 137 (2019), arguing that it was unreasonable to reduce his rate solely because he lacked a medical degree. Pet'rs' Mot., filed Aug. 14, 2025, at 16-20.

The Secretary responded, arguing that the fees decision was not arbitrary or capricious. The Secretary argued that it was within the special master's discretion to reduce Dr. Akbari's rate, and cited Lewis v. Sec'y of Health & Hum. Servs., 149 Fed. Cl. 308 (2020), in which the decision to reduce Dr. Akbari's rate for the same reason was sustained. Resp't's Resp., filed Sept. 14, 2025, at 8-9.

The Court held an oral argument via videoconferencing on October 14, 2025. Ct. Oral Arg. Tr. 1-49. At the end, the Court suggested that a compromise might be appropriate. However, the Secretary declined to participate in any discussions. See Jt. Status Rep., filed Dec. 15, 2025. The Court convened another proceeding, recorded by a court reporter, on January 13, 2026. The Court delivered a bench ruling granting the motion for review. Bench Ruling Tr. 1-

33, filed Jan. 29, 2026.[4] The Court again suggested an informal resolution was advisable, but directed the undersigned to consider whether to allow the Ennises to file a motion for supplemental fees. Bench Ruling Tr. at 30-31.

Upon remand, the Ennises' motion for leave to file supplemental fees was granted. Order, issued Jan. 30, 2026. This order also directed the Secretary to respond to the Court's suggestion that an informal resolution is appropriate, directed the Secretary to respond to the request for supplemental fees, and scheduled an oral argument.

The Secretary, again, declined to explore an informal resolution. Resp't's Status Rep., filed Feb. 13, 2026. An oral argument was held on March 4, 2026.

Following remand, the undersigned issued a new fees decision on April 13, 2026. The decision again found 34 hours of Dr. Cupps's work and 30.5 hours of Dr. Akbari's work compensable, maintained Dr. Cupps's $300.00 hourly rate, reduced Dr. Akbari's previously awarded hourly rate from $325.00 to $200.00, and deferred ruling on Petitioners' supplemental fee request. Second Fees Decision, issued Apr. 13, 2026, 2026 WL 1266185, at *18, *21–22.

In response, the Ennises filed another motion for review on May 13, 2026, challenging the Second Fees decision. The Ennises argued, among other things, that this decision did not comply with the January 2026 remand instructions because it continued to rely upon a generalized distinction between Ph.D. scientists and physicians, instead of explaining why Dr. Akbari's *particular* qualifications and work in this case warranted a reduced hourly rate.

The Court held oral argument on the second motion for review on June 17, 2026, and issued an oral ruling from the bench. The Court found that the determinations regarding Dr. Cupps's hourly rate and reasonable number of hours were not arbitrary and capricious. Second Bench Ruling Tr. at 48–50. However, the Court concluded that the analysis supporting Dr. Akbari's $200.00 hourly rate did not adequately evaluate the market for comparable expert services, or sufficiently explain why Dr. Akbari's lack of a medical degree justified reducing the requested rate in light of the specialized scientific work he actually performed. Second Bench Ruling Tr. at 50–52. Accordingly, on remand, the sole remaining issue to be resolved is what is a reasonable hourly rate for Dr. Akbari.

**D. Present Remand Proceedings**

Following the second remand, the special master directed the parties to respond to questions concerning the appropriate proceedings on remand. Order, issued June 23, 2026. Both parties filed their respective status reports on July 22, 2026. On July 28, 2026, the Ennises also filed a Second Motion for Leave to File Supplemental Costs and Fees, accompanied by updated billing records, cost documentation, and declarations from counsel. That motion seeks leave to

[4] Although the Court's second proceeding occurred on January 13, 2026, the transcript, which contained the Court's reasoning, was not filed until approximately two weeks later on January 29, 2026.

recover additional fees and costs incurred through the continued review and remand proceedings and remains pending.

## II. Standards for Adjudication

Because the Ennises received compensation, they are entitled to an award of reasonable attorneys' costs. 42 U.S.C. § 300aa–15(e). Thus, the question at bar is whether the requested amount is reasonable. For attorneys' fees, the Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. This is a two-step process. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008). First, a court determines an "initial estimate … by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Id. at 1348. The lodestar method is also used to determine reasonable compensation for experts. Caves v. Sec'y of Health & Human Servs., 111 Fed. Cl. 774, 779 (2013).

For an expert's hourly rate, special masters may consider a variety of factors. These include:

> (1) [T]he witness' area of expertise; (2) the education and training required to provide the expert insight that is sought; (3) the prevailing rates for other comparably respected available experts; (4) the nature, quality and complexity of the [information] provided; (5) the cost of living in the particular geographic area; and (6) any other factor likely to be of assistance to the [Special Master] in balancing the interests implicated by the [Vaccine Act].

Frantz, 146 Fed. Cl. at 145.[5]

Any request for a reasonable number of hours should not include hours that are excessive, redundant, or otherwise unnecessary. See Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (discussing request for attorneys' fees).

In attempting to determine a reasonable amount of attorneys' fees and costs, trial courts should attempt to achieve the "essential goal" of "rough justice." Fox v. Vice, 563 U.S. 826, 838 (2011). In doing so, trial courts must take care to balance competing interests, one in which the amount of attorneys' fees and costs encourages participation in litigation yet the amount does not create a windfall. Blum v. Stenson, 465 U.S. 886 (1984); Biery v. United States, 818 F.3d 704, 710 (Fed. Cir. 2016).

Awards of attorneys' fees and costs are based upon the reasonableness of the expense when the activity is performed, not when it is paid. Awards that account for delay in payment,

---

[5] Although the parties refer to these as the Frantz factors, use of these factors predates the Frantz case. See Frantz, 146 Fed. Cl. at 145 (citing Wilcox v. Sec'y of Dep't of Health & Hum. Servs., No. 90-991V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997)).

such as awards of interest, violate sovereign immunity. Avera v. Sec'y of Health & Hum. Servs., 75 Fed. Cl. 400, 405 (2007), aff'd in part and rev'd in part on non-related grounds, 515 F.3d 1343 (Fed. Cir. 2008); Pestka v. Sec'y of Health & Hum. Servs., No. 06-708, 2011 WL 4433634, at *5 (Fed. Cl. Spec. Mstr. Aug. 30, 2011).

## III. Analysis

The Court has set forth what must be determined on this second remand. However, the remand does not direct the undersigned to embrace a specific rate either.[6] Rather, the determination now to be made should take into account what, if any, distinction should be drawn between the hourly rate a Ph.D. should receive for expert work versus a medical doctor.

One permissible approach that the two Remand Decisions seem to embrace would be to first assess whether Dr. Akbari's requested $500.00 hourly rate was "aligned with the prevailing market rate," and then evaluate whether the quality of his work ultimately warranted "a reduction either in the hourly rate or in the hours." Second Bench Ruling Tr. at 52. With that appellate guidance, the undersigned finds that a reasonable hourly rate for Dr. Akbari's work in this case is $450.00 per hour. This rate is less than the requested rate ($500.00 per hour). But the undersigned cannot go farther than $450.00 per hour in good conscience – and this somewhat-modest reduction meets both the terms of the remand mandates and the undersigned's reasonable concerns about Dr. Akbari's performance (which were discussed in the prior fees decisions).

Overall, the $50.00 reduction from the $500.00 comparator rate rests not on Dr. Akbari's lack of a medical license, but on the quality of the work he actually provided in this case. Dr. Akbari's report was not as informative or well-written as the comparable expert reports in the record, including those prepared by medical doctors specializing in immunology, warranting a deduction of 10 percent (or $50.00 per hour) in his hourly rate. This concern about Dr. Akbari's work does not arise in a vacuum. As noted previously, other special masters have criticized Dr. Akbari's work. Second Fees Decision, 2026 WL 1266185, at *20–21. For another recent opinion also critical of Dr. Akbari's work, see Cote v. Sec'y of Health & Hum. Servs., No. 18-

---

[6] The mandate rule gives effect not only to what a reviewing court expressly decides, but also to what it resolves by "necessary implication." TecSec, Inc. v. Int'l Bus. Machs. Corp., 731 F.3d 1336, 1341–42 (Fed. Cir. 2013) (explaining that the mandate rule "forecloses reconsideration of issues implicitly or explicitly decided on appeal," and that an issue is implicitly decided when it is "decided by necessary implication"). In discerning those implications, a lower tribunal must consider "both the letter and the spirit of the mandate," id. at 1342, and must determine the scope of the mandate "not simply from the language of the judgment, but from the judgment in combination with the accompanying opinion." Exxon Chem. Pats., Inc. v. Lubrizol Corp., 137 F.3d 1475, 1483 (Fed. Cir. 1998); see also Laitram Corp. v. NEC Corp., 115 F.3d 947, 951 (Fed. Cir. 1997); *see also* SEKRI, Inc. v. United States, 163 Fed. Cl. 562, 589 (2022) (quoting Engel Indus., Inc. v. Lockformer Co., 166 F.3d 1379, 1383 (Fed. Cir. 1999).

1350V, 2026 WL 1555934, at *27 (Fed. Cl. Spec. Mstr. Mar. 27, 2026). And this approach is consistent with the Court's suggestions on remand. Second Bench Ruling Tr. at 52.

Notably, this (hopefully final) Decision *increases* Dr. Akbari's hourly rate from $200.00 per hour, as found in the Second Fees Decision, to $450.00 per hour. In so doing, the undersigned seeks to act in accordance with the Supreme Court's admonition that disputes over attorneys' fees "should not result in a second major litigation." Fox v. Vice, 563 U.S. 826, 838 (2011); accord Bywaters v. United States, 670 F.3d 1221, 1236 (Fed. Cir. 2012) (Plager, J., dissenting). The $450.00 rate reflects the particular record in this case, including the procedural posture following two motions for review and two remands and the Court's guidance.[7]

In short, for this case, Dr. Akbari is being compensated at a rate of $450.00 per hour. The amount of hours for which he has invoiced (30.5) remains reasonable. Thus, the lodestar formula produces a result of $13,725.00.

## IV. **Calculations**

The three decisions awarding attorneys' fees and costs have found these amounts to be reasonable:

| | |
|---|---|
| Attorneys' Fees awarded in First Fees Decision | $222,255.50 |
| Attorneys' Costs awarded in First Fees Decision | $30,508.90 |
| Award for Dr. Cupps in Second Fees Decision | $10,200.00 |
| Award for Dr. Akbari in this Fees Decision | $13,725.00 |
| TOTAL | $276,689.40 |

## V. **Conclusion**

The undersigned awards $276,689.40 (representing $222,255.50 in attorneys' fees and $54,433.90 in attorneys' costs). This amount shall be paid through an ACH deposit to petitioners' counsel's IOLTA account for prompt disbursement.

[7] A different judge has found that compensating Dr. Akbari at a rate that reflects his lack of medical licensure was not arbitrary. Lewis v. Sec'y of Health & Hum. Servs., 149 Fed. Cl. 308, 314-16 (2020). Accordingly, the reasonable rate for Dr. Akbari in any future case must be determined on the record presented there, including the nature and quality of the work performed. Given this difference in outcomes, an opinion from the Federal Circuit may be required to establish consistency.

The Clerk's Office is directed to provide this decision to the Court. See Vaccine Rule 28.1(a). In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[8]

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master

[8] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.